UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRMA ALVAREZ,<br><br>            Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | Case No. 2:24-cv-03568-CSK<br><br>ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 8, 10) |

Plaintiff Irma Alvarez seeks judicial review of a final decision by Defendant Commissioner of Social Security denying an application for period of disability and disability insurance benefits.[1] In the summary judgment motion, Plaintiff contends the final decision of the Commissioner contains legal error and is not supported by substantial evidence. Plaintiff seeks a remand for an award of benefits or, alternatively, for further proceedings. The Commissioner opposes Plaintiff's motion, filed a cross-motion for summary judgment, and seeks affirmance.

For the reasons below, Plaintiff's motion is DENIED, the Commissioner's cross-motion is GRANTED, and the final decision of the Commissioner is AFFIRMED.

/ / /

---

[1] This action was referred to the magistrate judge under Local Rule 302(c)(15) and proceeds on the consent of all parties. (ECF Nos. 4-6.)

1

I.  **SOCIAL SECURITY CASES:  FRAMEWORK & FIVE-STEP ANALYSIS**

The Social Security Act provides benefits for qualifying individuals unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(a). When an individual (the "claimant") seeks Social Security disability benefits, the process for administratively reviewing the request can consist of several stages, including: (1) an initial determination by the Social Security Administration; (2) reconsideration; (3) a hearing before an Administrative Law Judge ("ALJ"); and (4) review of the ALJ's determination by the Social Security Appeals Council. 20 C.F.R. §§ 404.900(a).

At the hearing stage, the ALJ is to hear testimony from the claimant and other witnesses, accept into evidence relevant documents, and issue a written decision based on a preponderance of the evidence in the record. 20 C.F.R. § 404.929. In evaluating a claimant's eligibility, the ALJ is to apply the following five-step analysis:

> **Step One**: Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to step two.
>
> **Step Two**: Does the claimant have a "severe" impairment? If no, the claimant is not disabled. If yes, proceed to step three.
>
> **Step Three**: Does the claimant's combination of impairments meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")? If yes, the claimant is disabled. If no, proceed to step four.
>
> **Step Four**: Is the claimant capable of performing past relevant work? If yes, the claimant is not disabled. If no, proceed to step five.
>
> **Step Five**: Does the claimant have the residual functional capacity to perform any other work? If yes, the claimant is not disabled. If no, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. § 404.1520(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the ALJ finds a claimant not disabled, and the Social Security Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner. *Brewes v. Comm'r.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of review is a non-final agency action). At that point, the claimant may seek judicial review of the

Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has repeatedly admonished that the court cannot manufacture arguments for the plaintiff. *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court should "review only issues which are argued specifically and distinctly," and noting a party who fails to raise and explain a claim of error waives it).

A district court may reverse the Commissioner's denial of benefits only if the ALJ's decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d. at 1154. Substantial evidence is "more than a mere scintilla" but "less than a preponderance," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in the record that both supports and detracts from the ALJ's conclusion, but may not affirm on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation, or where any error is harmless. *Id.*

II.     **FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS**

On June 17, 2022, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, alleging she has been disabled since March 3, 2020.[2]

---

[2] The Court notes that Plaintiff's brief states that Plaintiff is claiming an onset of disability date of March 20, 2019. Pl. MSJ at 4 (citing AT 194) (ECF No. 8). However, the Disability Determination Explanation states that Plaintiff alleges inability to function and/or work as of March 3, 2020 (AT 71), the ALJ confirmed the March 2020 date with Plaintiff's attorney at the November 2023 hearing (AT 40), and the ALJ cites the March 2020 date in the opinion (AT 17). Further, Plaintiff does not appear to take issue with the date. Accordingly, the Court will conduct its analysis based on the March 3, 2020 date.

Administrative Transcript ("AT") 70-71, (available at ECF No. 7). Plaintiff claimed disability due to chronic pain, fibromyalgia, knee arthritis, carpal tunnel syndrome, left arm and wrist problems, anxiety, depression, low back pain, neck problems, and shoulder problems. AT 71. Plaintiff's applications were denied initially and upon reconsideration; she sought review before an ALJ. AT 70-84, 86-102, 95-96, 121-22. Plaintiff appeared with a representative at a November 8, 2023 hearing before an ALJ, where Plaintiff testified about her impairments and a vocational expert testified about hypothetical available jobs in the national economy. AT 34-69.

On March 22, 2021, the ALJ issued a decision finding Plaintiff was not disabled from March 3, 2020 through March 31, 2021. AT 17-19. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of March 3, 2020, through her date last insured of March 31, 2021. AT 19. At step two, the ALJ determined Plaintiff had the following severe impairments:  obesity, fibromyalgia, bilateral carpal tunnel syndrome, and degenerative disc disease of the cervical and lumber spine. *Id.* At step three, the ALJ found Plaintiff's combination of impairments did not meet or medically equal any Listing. AT 21 (citing 20 C.F.R Part 404, Subpart P, Appendix 1). Relevant here, the ALJ considered Listing 1.15 (disorders of the skeletal spine) and 14.09 (inflammatory arthritis) for Plaintiff's physical impairments. *Id.* The ALJ found Plaintiff's medically determinable mental impairments of an eating disorder, attention deficit hyperactivity disorder ("ADHD"), generalized anxiety disorder, and depressive disorder to be non-severe. AT 20. The ALJ examined the "Paragraph B" criteria for the mental impairments,[3] finding Plaintiff had no limitation in understanding, remembering, or applying information and adapting or managing oneself;

---

[3] "Paragraph B" lists four categories for evaluating how a claimant's mental disorders limit their functioning:  understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. To be found disabled under the Paragraph B categories, the mental disorder must result in an "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, sub. A.2.b.

and mild limitation in interacting with others and concentrating, persisting, or maintaining pace. AT 20-21.

The ALJ then found Plaintiff had the residual functional capacity to perform light work (20 C.F.R. §§ 404.1567(b)), except that Plaintiff:

> [C]ould never climb ladders, ropes, or scaffolds but could occasionally climb ramps and stairs; and no more than occasionally balance, stoop, crouch, crawl, and kneel. The claimant could no more than frequently handle and finger bilaterally; and no more than frequently reach overhead bilaterally.

AT 22.[4] In crafting this residual functional capacity, the ALJ stated she considered Plaintiff's symptom testimony, the objective medical evidence, medical opinions, and prior administrative medical findings. *Id.*

Based on the residual functional capacity, the ALJ determined at step four that Plaintiff was incapable of performing past relevant work. AT 27. However, at step five, the ALJ found Plaintiff capable of performing other jobs in the national economy, including: (i) housekeeping cleaner, with 178,000 jobs nationally; (ii) price marker, with 137,000 jobs nationally; and (iii) collector, with 33,000 jobs nationally. AT 29. The ALJ also noted that the vocational expert indicated that representative occupations at the sedentary exertional level include: (i) escort vehicle driver, with 37,000 jobs nationally; (ii) document preparer, with 16,000 jobs nationally, and (iii) addresser, with 2,000 jobs nationally. *Id.* Thus, the ALJ found Plaintiff not disabled during the relevant period. *Id.*

On May 4, 2023, the Appeals Council rejected Plaintiff's appeal. AT 1-6. Plaintiff filed this action requesting judicial review of the Commissioner's final decision, and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 8, 10.)

/ / /

/ / /

---

[4] The ALJ included a footnote on the residual functional capacity, noting that the jobs cited in the opinion would remain even without the mental restrictions, as the residual functional capacity at the hearing was more restrictive. AT 22 n.1.

### III. ISSUES PRESENTED FOR REVIEW

Plaintiff contends the ALJ erred by failing to: (A) properly assess Plaintiff's symptom testimony, and (B) properly consider the opinion of Frank Fine, M.D. when determining the residual functional capacity. Pl. MSJ (ECF No. 8).

The Commissioner argues the ALJ: (A) properly assessed Plaintiff's subjective allegations; and (B) properly evaluated Dr. Fine's opinions. Def. MSJ (ECF No. 10.) Thus, the Commissioner contends the decision as a whole is supported by substantial evidence and should be affirmed. *Id.*

### IV. DISCUSSION

#### A. Subjective Symptom Testimony

Plaintiff argues that the ALJ improperly discounted Plaintiff's subjective symptom testimony. Pl. MSJ at 5-9.

##### 1. Legal Standards

A claimant's statements of subjective symptoms alone are insufficient grounds to establish disability. 20 C.F.R §§ 404.1529(a), 416.929(a). If an ALJ was required to believe every allegation of pain or impairment, disability benefits would run afoul of the Social Security Act and its purpose. *Treichler v. Comm'r,* 775 F.3d 1090, 1106 (9th Cir. 2014). In evaluating the extent to which an ALJ must credit the claimant's report of their symptoms, the Ninth Circuit has stated:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (quotations omitted). The ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony must be sufficiently specific to allow a reviewing court to conclude the adjudicator did not arbitrarily discredit a claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quotations omitted). Examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony include: prescription of conservative treatment, *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); inconsistencies between the plaintiff's testimony and conduct (including daily activities), *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005); whether the alleged symptoms are consistent with the medical evidence of record, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); an unexplained or inadequately explained failure to follow a prescribed course of treatment, *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991); or prior inconsistent statements by the plaintiff, *Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989). A lack of corroborating, objective medical evidence alone is insufficient grounds for an ALJ to discount subjective symptoms; however, it is a factor the ALJ may consider. *Rollins*, 261 F.3d at 857 (citing 20 C.F.R § 404.1529(c)(2)).

    2.  <u>Symptom Testimony re: Physical Impairments</u>

  Regarding Plaintiff's statements that is disabled due to fibromyalgia, knee arthritis, carpal tunnel, anxiety, back pain, and neck pain, the ALJ began by summarizing Plaintiff's statements at the November 2023 hearing. AT 34-69. Plaintiff testified that she is five feet five inches tall and weighed 190 pounds, and that her doctor recommended eating healthier and exercising due to her weight. AT 47-48. Plaintiff stated that she walked fifteen to twenty minutes two to three times a week. AT 48. Plaintiff also testified that she was diagnosed with fibromyalgia, which was treated with acupuncture and some medicine. AT 48-49. Plaintiff stated that she was diagnosed with carpal tunnel syndrome, which was treated with a muscle relaxer, pain medication, and reduced use. AT 49-50. Plaintiff experiences numbness and a weakened grip. AT 59-60. Plaintiff discussed her knee condition that was treated with injections and pain medication. AT 51. Plaintiff

testified that she uses bite guards and muscle relaxers to treat her TMJ syndrome. AT 51-52. Plaintiff receives therapy and takes medication to treat anxiety, depression, and ADHD. AT 52. Plaintiff also testified that she had headaches, neck pains, and back pains and takes a muscle relaxant and pain medication for treatment. AT 52. Plaintiff testified that she has hip pain that makes it difficult to sit or lie down. AT 59. Plaintiff uses a cane a few times a month. AT 59.

Plaintiff testified that she lives in a single-story house, and that she needs assistance with household chores. AT 52-53. Specifically, Plaintiff testified that her spouse takes out the garbage and she pays a third party to help with other chores. AT 53-54. Plaintiff makes some of her own meals, and has some groceries delivered and her spouse also gets groceries. AT 53-54. Plaintiff testified that she goes to the grocery store once a week and someone drives her, but she also testified that she can drive a short distance maybe once a week. AT 54. Plaintiff stated she is able to drive approximately twenty or thirty minutes before she needs a break. AT 55. When she goes to the grocery store, Plaintiff is able to carry some groceries but also needs help from a clerk. AT 55. Plaintiff leaves her home to participate in religious services once a week. AT 56. Plaintiff testified that she can stand and walk around for twenty minutes before she needs to sit down for about ten minutes to rest. AT 57-58. Plaintiff is able to lift a gallon of water or milk but only for a short amount of time. AT 58.

The ALJ concluded the symptoms Plaintiff alleged could be caused by her physical impairments, but "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AT 24.

First, the ALJ properly noted the inconsistencies between Plaintiff's testimony and the objective medical evidence. AT 23-25. The ALJ noted that Plaintiff saw a doctor for her neck and back pain in June 2020, who found Plaintiff has positive tender points. AT 484-86. Plaintiff was prescribed an MRI and pain medication, and the MRI showed moderate disc degeneration. AT 1586-87. In August 2020, Plaintiff was treated for hand

numbness, and the doctor noted Plaintiff had a weak grip. AT 476-79. In August 2020, Plaintiff had an x-ray of her hips, which was normal. AT 475-76. In September 2020, Plaintiff had an EMG, which showed moderate to severe neuropathy in her left wrist. AT 466-67. In October 2020, Plaintiff had a normal gait and could perform heel-to-toe walking. AT 4534. In December 2020, it was noted that Plaintiff had no joint deformities in her wrists or hands. AT 451. In January 2021, Plaintiff had a normal gait, but had trouble performing heel-to-toe walking. AT 376. Plaintiff had intact strength and sensation. AT 377, 378. An MRI of Plaintiff's lumber showed evidence of bulging discs. AT 378. In February 2021, Plaintiff was again found to have a normal gait. AT 357.

Plaintiff was found on multiple occasions to have a normal gait and normal leg strength (AT 323-29, 344-48, 354-58, 364-68, 373-80), which contradicts Plaintiff's allegations of limited walking ability. Further, Plaintiff had normal muscle functioning in her arms, contradicting her allegations of debilitating carpal tunnel syndrome. AT 4529. The ALJ could consider the objective medical evidence in resolving conflicts in Plaintiff's testimony, and did not err in finding Plaintiff's own stated extreme limitations contradicted by the mostly normal medical findings in the record. *See Rollins*, 261 F.3d at 857; *see also Marshall v. Saul*, 830 F. App'x 179, 181 (9th Cir. 2020) (finding clear and convincing reasons to reject the plaintiff's symptom testimony where there was a "disjunction between his statements that [he] could not walk and medical evidence showing that his gait was normal").

Plaintiff argues that her symptoms, which resulted in the residual functional capacity determined by Dr. Fine, are supported by the medical evidence provided by Dr. Kalpana Balagury, Dr. Peter Mandell, and two medical reports from August 27, 2022 and September 17, 2020. AT Pl. MSJ at 12-13. The Court has reviewed the evidence cited and finds that the reports from Dr. Balagury rely primarily on Plaintiff's subjective statements. AT 415, 423-24, 4418-19. An ALJ does not err by rejecting an opinion that is based largely on a plaintiff's self-reports that have been properly discounted. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Further, the ALJ found the

opinion of Dr. Mandell, except for his lifting restrictions, not persuasive as discussed below. As to the medical reports from August 27, 2022 and September 17, 2020, the ALJ has done a comprehensive review of the medical and other evidence and found that overall it was inconsistent with Plaintiff's symptom testimony. The ALJ considered the whole of this record in crafting Plaintiff's physical limitations in the residual functional capacity. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).

Second, the ALJ considered Plaintiff's positive response to treatment. AT 22-25. The ALJ noted that the record included "significant evidence" prior to the alleged onset date and evidence that relates to a period prior to a duration of substantial gainful activity that lasted for six years, from 2014 to 2020. AT 25 (citing 218-22, 4544-71). The ALJ noted that any evidence concerning treatment prior to 2014 has been "largely supplanted" by the fact that Plaintiff did work at a substantial gainful activity level for six years. AT 25. In March 2020, Plaintiff attended a physical therapy session for her neck pain and acupuncture sessions from March to May 2020. AT 504-06. Plaintiff admitted to decreased muscle spasms from the sessions. AT 384-85, 388-91. In April 2020, Plaintiff attended therapy for her back pain, which she stated was managed with activity modifications, and Plaintiff had improvement in her left wrist from exercises. AT 496-98, 588-89. In April 2020, Plaintiff saw a chiropractor for her back and neck pain, who noted that she tolerated the treatment well. AT 4286-91. Plaintiff admitted to feeling better after sessions in May and June 2020. AT 4250-69. In July and August 2020, Plaintiff admitted during her chiropractor sessions that she had improvement in some daily living activities and felt better. AT 4225-27, 4238-43. In December 2020, Plaintiff requested acupuncture for her wrists and was prescribed Diclofenac gel. AT 451. In January 2021, Plaintiff was prescribed Naproxen for pain in her ankle and knee, which she admitted relieved 30% of her pain. AT 365, 366, 367, 376, 378. Plaintiff was again prescribed pain gel. In January 2021, Plaintiff attended therapy and stated that she had some pain relief from acupuncture and chiropractic sessions. AT 441-42. Plaintiff requested to go back to acupuncture in February 2021 because it helped her pain. AT 436. In February 2021,

Plaintiff had improvement in her pain with Toradol injections and stated that the chiropractor provided improved back pain and function. AT 356, 357. Evidence of conservative treatment is a clear and convincing reason for the ALJ to discount Plaintiff's subjective symptom testimony. *See Parra*, 481 F.3d at 750-51. Therefore, the ALJ properly relied on evidence of treatment to discount Plaintiff's subjective symptom testimony.

Further, the ALJ also considered that Plaintiff did not receive treatment for certain issues, or denied treatment. AT 25. The ALJ noted that Plaintiff testified that she suffers from headaches, but the record does not show any specific care of complaints regarding headaches other than acupuncture helping. *See* AT 436. Further, the ALJ noted Plaintiff testified that she has trouble lifting objects due to numbness in her hands, but there was no evidence of specific care for carpal tunnel syndrome prior to the date last insured. AT 25. Plaintiff declined offers for treatment in September 2020 for her left wrist. AT 465. In October 2020, there were no entrapment signs evident relating to her carpal tunnel syndrome. AT 4529. Though Plaintiff stated that she could only walk for twenty minutes but needed a ten minute break, Plaintiff did not complain of any issues walking prior to the date last insured. There was evidence of normal gait and strength in her legs. AT 323-29, 344-48, 354-58, 364-68, 373-80. Failure to seek treatment and noncompliance with a prescribed course of treatment is a permissible reason to discount Plaintiff's symptom testimony. *See Bunnell*, 947 F.2d at 346.

The ALJ also cited Plaintiff's activities of daily living as a reason for discounting the more severe aspects of her testimony. AT 24-25. The ALJ noted that Plaintiff testified that her spouse helped with chores, she cooks some of her meals, and can drive herself. AT 25. The ALJ also noted that Plaintiff admitted to some improvement in her activities of daily living with the chiropractic sessions. AT 4217, 4225, 4241. In October 2020, Plaintiff indicated that she could jog. AT 4256. Further, Plaintiff testified that she attended religious services, but did not state that she attended any other social events. *See* AT 56. However, in May 2023, Plaintiff took a trip to Mexico. AT 4586, 4593. The

ALJ found that Plaintiff's ability to take a vacation was directly inconsistent with her testimony regarding her limitations. AT 25. Contradictions between Plaintiff's symptom testimony and her actual activities of daily living is a permissible reason to discount Plaintiff's severely limiting symptom statements. *See Burch*, 400 F.3d at 680-81 (finding symptom statements contradicted by the plaintiff's ability to care for her personal needs, cook, clean and shop, interact with family and boyfriend, and noting that though these daily activities "may also admit of an interpretation more favorable to [the plaintiff], the ALJ's interpretation was rational" and must be upheld where susceptible to more than one rational interpretation). Plaintiff did not explicitly challenge the ALJ's findings on this point in her opening brief. *See Mata*, 2014 WL 5472784, at *4.

Finally, the ALJ did not wholly discount Plaintiff's symptom statements. The ALJ did not deem Plaintiff able to perform any job in the national economy. Instead, the ALJ found that Plaintiff was limited to light work, with additional physical limitations included in her residual functional capacity. AT 22. Under the regulations, Plaintiff's statements of subjective symptoms alone are insufficient grounds to establish disability. 20 C.F.R § 404.1529(a). The Court finds the ALJ provided sufficiently specific reasons for discounting the more severe aspects of Plaintiff's symptom testimony regarding her physical impairments, such that the Court does not find Plaintiff's testimony was arbitrarily discredited. *See Brown-Hunter*, 806 F.3d at 493.

### B.     Residual Functional Capacity Formulation

Plaintiff argues that the ALJ erred in determining Plaintiff's residual functional capacity by improperly evaluating the medical opinion of Dr. Fine. *See* Pl. MSJ at 14-17.

A claimant's residual functional capacity assessment is a determination of what the claimant can still do despite his or her physical, mental and other limitations. 20 C.F.R. § 404.1545(a). The residual functional capacity is the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). In determining a claimant's residual functional capacity, an ALJ must assess all the

evidence (including the descriptions of limitation, and medical reports) to determine what capacity the claimant has for work despite the impairment(s). 20 C.F.R. § 404.1545(a); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (a residual functional capacity that "fails to take into account a claimant's limitations is defective"). Therefore, an ALJ errs when he provides an incomplete residual functional capacity ignoring "significant and probative evidence." *Hill v. Astrue*, 698 F.3d 1153, 1161-62 (9th Cir. 2012).

The residual functional capacity does not need to directly correspond to a specific medical opinion; rather, "the ALJ is responsible for translating and incorporating clinical findings into a succinct [residual functional capacity]." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). ALJs are capable of independently reviewing and forming conclusions about medical evidence to determine whether a claimant is disabled and cannot work, as required by statute. *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022). The ALJ's residual functional capacity assessment should be affirmed if the ALJ has applied the proper legal standard and the decision is supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

### 1. Medical Opinion Evidence

For applications filed on or after March 27, 2017, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from [a plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c(a) and 416.920c(a). Instead, the ALJ is to evaluate medical opinions and prior administrative medical findings by considering their "persuasiveness." *Id.*

In determining how "persuasive" the opinions of medical sources and prior administrative medical findings are, an ALJ must consider the following factors: "supportability, consistency, treatment relationship, specialization, and 'other factors.'" 20 C.F.R. §§ 404.1520c and 416.920c at sub. (b) and (c)(1)-(5). Despite a requirement

to "consider" all factors, the ALJ only need articulate a rationale on how the supportability and consistency factors were considered, as they are "the most important factors." *Id.* at sub. (b)(2). A medical opinion is supported if the medical source explains the relevant objective medical evidence. *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022). A medical opinion's consistency concerns its alignment with other medical and nonmedical sources in the record. *Id.* at 792. The regulations grant the ALJ flexibility to weigh the supportability and consistency factors based on all evidence in the record. 20 C.F.R. §§ 404.1520c(c)(1)-(2) and 416.920c(c)(1)-(2). The ALJ is not required to articulate findings on the remaining factors (relationship with plaintiff, specialization, and "other") unless "two or more medical opinions or prior administrative medical findings about the same issue" are "not exactly the same," and both are "equally well-supported [and] consistent with the record." *Id.* at sub. (b)(2)-(3). An ALJ may address multiple opinions from a single medical source in one analysis. 20 C.F.R. §§ 404.920c(b)(1) and 416.920c(b)(1) ("source-level articulation"). Generally speaking, the ALJ does not need to discuss every piece of evidence when interpreting the evidence and developing the record. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

2.   Analysis

The ALJ considered the April 2023 opinions by Dr. Fine. AT 26-27. The ALJ noted that Dr. Fine found that Plaintiff cannot stand more than twenty minutes, and she needs to rest five to ten minutes. AT 4576. Plaintiff cannot lift more than ten pounds from the waist up, and cannot lift more than five pounds with both hands. *Id.* Plaintiff cannot push, pull, or lift more than ten pounds at or above shoulder height with either shoulder. *Id.* Plaintiff cannot bend or stoop. *Id.* In another opinion from April 2023, Dr. Fine noted that Plaintiff could only walk for one hour and needed a cane. AT 4578. Plaintiff required unscheduled breaks for twenty minutes every hour, and needed to elevate her legs. AT 4581, 4582.

The ALJ found the opinions of Dr. Fine not persuasive, because they are not consistent with or supported by the record. AT 26. The ALJ noted that there is only one

14

exam by Dr. Fine, and it was from two years after the date last insured. *See* AT 4572-77. Further, the ALJ found that there was nothing to support greater manipulative limitations because Dr. Mandell found Plaintiff had no entrapment signs at the carpal tunnels and opined that Plaintiff could lift twenty pounds. AT 4529, 4534. The ALJ found Dr. Mandell's opinion as to Plaintiff's lifting restrictions persuasive. AT 26. The ALJ also noted that there was evidence during this time of intact gait and strength, with no mention of an assistive device, and Plaintiff went on a trip to Mexico. AT 323-29, 344-48, 354-58, 364-68, 373-80, 4593.

   The ALJ properly found these opinions unpersuasive and supported the finding with substantial evidence. Plaintiff argues that Dr. Fine's opinions are corroborated and supported by other medical evidence and opinions in the record; specifically Mohinder Nijar, M.D.'s evaluation, Dr. Mandell's evaluation, and a November 9, 2022 medical report. Pl. MSJ at 16-17. First, Dr. Nijar's opinion was from 2013, which is before the alleged onset date. *See* AT 26, 4544-62. The ALJ found this opinion not persuasive because it was years before the alleged onset date, and because Plaintiff engaged in substantial gainful activity during the timeframe. AT 26, 218-22. Second, except for Dr. Mandell's opinion about Plaintiff's lifting restrictions, the ALJ found Dr. Mandell's opinion unpersuasive. AT 26. Plaintiff does not argue that the ALJ erred in the evaluation of Dr. Mandell's opinion, but only uses this opinion to support the argument that Dr. Fine's opinion was improperly evaluated. *See* Pl. MSJ at 16. The ALJ found Dr. Mandell's opinion unpersuasive because it was inconsistent and unsupported by the record. AT 26. Specifically, the ALJ found that there was nothing in the record to support Dr. Mandell's opinion that Plaintiff could not stand for more than twenty minutes or be on her feet for more than forty-five minutes, and that the record showed that Plaintiff had evidence of normal gait, range of motion, and strength. AT 26; *see* AT 323-29, 344-48, 354-58, 364-68, 373-80. Third, Plaintiff cites to a report from November 9, 2022, where the doctor noted that Plaintiff wished to see a vascular specialist because she used to get swelling in her legs, and stated that Plaintiff has pain on both sides of her neck. Pl.

MSJ at 17 (citing AT 4470). The Court notes that in Plaintiff's motion, she quotes from this page in the record but left out that Plaintiff denies current leg swelling and calf pain. AT 4470. This portion of the record appears to be Plaintiff's subjective statements, which the ALJ properly discounted. The ALJ did not err by not relying on portions of a report that could be explained as Plaintiff's subjective statements. *See Tommasetti*, 533 F.3d at 1041. The ALJ properly discounted these opinions and portions of the medical record and did not err by not considering them to support Dr. Fine's opinions.

## V.   CONCLUSION

Having addressed all of the points of error raised by Plaintiff, the Court finds the ALJ's decision otherwise supported by substantial evidence in the record and free from legal error. *See Ford*, 950 F.3d at 1148 (noting that a district court may reverse only if the ALJ's decision "contains legal error or is not supported by substantial evidence").

**ORDER**

Accordingly, the Court ORDERS:

1. Plaintiff's motion for summary judgment (ECF No. 8) is DENIED;
2. The Commissioner's cross-motion (ECF No. 10) is GRANTED;
3. The final decision of the Commissioner is AFFIRMED; and
4. The Clerk of the Court is directed to CLOSE this case.

Dated: 08/06/25

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

5, alva.3568